**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| ROBERT BRANTLEY, JR., | : | Case No. 1:24-cv-52 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| POSTMASTER GENERAL LOUIS DEJOY, | : | |
| | : | |
| Defendant. | : | |

_____

### ORDER AND OPINION

_____

This matter is before the Court on Defendant's Motion to Dismiss (Doc. 19) and Plaintiff's Motion for Leave to File Amended Complaint (Doc. 26). Plaintiff filed a Response in Opposition to Defendant's Motion (Doc. 20), to which Defendant filed a Reply in Support (Doc. 27). Defendant filed a Response in Opposition to Plaintiff's Motion (Doc. 28). Plaintiff did not file a reply, and the time to do so has passed. Thus, this matter is ripe for review. For the reasons stated below, Defendant's Motion to Dismiss (Doc. 19) is **GRANTED**. Plaintiff's Motion for Leave to File Amended Complaint (Doc. 26) is **DENIED**.

### ALLEGED FACTS

Plaintiff Robert Brantley, Jr. has worked for the United States Postal Service ("USPS") as a letter carrier since 1985. (Compl., Doc. 1, ¶ 8.) In 1994, Plaintiff suffered a work-related injury to his lower back, for which he applied and received worker's compensation benefits. (*Id.* at ¶ 9.) He reinjured his lower back in 1995 when his USPS

vehicle was struck from behind by another vehicle, which caused him to miss nine months of work. (*Id.* at ¶ 10.) As a result of these injuries and the physical nature of his job, Plaintiff has experienced deterioration of his hips and back, resulting in two hip replacements and reduced mobility in both his hips and lower spine. (*Id.*) Plaintiff has required time off work to attend doctor's appointments related to these injuries and Defendant, in turn, has requested documented explanation for each time he has taken off work. (*Id.* at ¶ 11-12.) Plaintiff has filed four grievances, challenging Defendant's practice; each grievance was resolved in Plaintiff's favor. (*Id.* at ¶ 12.)

Plaintiff, however, alleges that his supervisors at USPS have discriminated against him and harassed him after these events because of his age, race, and disability. (Compl., Doc. 1, ¶ 12.) He claims that he is the only African-American or employee over the age of 40 who is required to provide documentation for time off work; meanwhile, a disabled veteran at another local Post Office is not. (*Id.* at ¶ 13.) Additionally, Plaintiff asserts that his supervisors "deliberately watch[] him as he sort[s] packages at his work station," and "harass" him while he works, citing an incident where one supervisor walked over to his work station and "tapp[ed] a stick to disrupt him." (*Id.* at ¶ 14.) Finally, Plaintiff requested a temporary schedule change that would allow him to arrive and leave work earlier, but his supervisors refused. (*Id.* at ¶ 15.) They stated the need for approval from the Cincinnati Postmaster. (*Id.*) But, Plaintiff alleges that a Caucasian, non-disabled employee was permitted to make a similar change to his schedule without seeking approval. (*Id.*) After these events, Plaintiff filed a formal charge with the Postal Service, Equal Employment Opportunity ("EEO") Office, alleging discrimination and retaliation based

on race, age, and disability. (*Id.* at ¶ 17.) On November 7, 2023, the Postal Service issued its Final Agency Decision, denying Plaintiff's EEO claim. (*Id.*)

## PROCEDURAL POSTURE

On February 2, 2024, Plaintiff filed his Complaint in which he alleges that Defendant violated: Title VII of the Civil Rights Act of 1965, 42 U.S.C. § 2000e, *et seq.*; Section 3(a) of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a); and Section 3(2) of the Americans with Disabilities Act, 42 U.S.C. § 12102(2)(a). (*See* Compl., Doc. 1.) On August 2, 2024, Plaintiff moved for default judgment (Doc. 9) against Defendant and on August 14, 2024, Plaintiff applied for an entry of default from the Clerk of Courts (Doc. 13). However, Defendant timely filed his Motion to Dismiss (Doc. 19), so the Court denied Plaintiff's Motion for Default Judgment (Doc. 22). Plaintiff then filed a Motion for Leave to File Amended Complaint (Doc. 26). Both Defendant's and Plaintiff's Motions are ripe for review.

## LAW AND ANALYSIS

### I.    **Defendant's Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a claim for lack of subject-matter jurisdiction. The plaintiff bears the burden of proving that jurisdiction is proper. *Cob Clearinghouse Corp. v. Aetna U.S. Healthcare, Inc.*, 362 F.3d 877, 881 (6th Cir. 2004) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Federal courts are "courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). One form of subject matter jurisdiction encompasses "federal questions," or those

claims "arising under" the Constitution or laws of the United States. 28 U.S.C. § 1331.

Meanwhile, a Rule 12(b)(6) motion to dismiss for failure to state a claim tests a plaintiff's cause of action as stated in a complaint. *Golden v. City of Columbus*, 404 F.3d 950, 958 (6th Cir. 2005); Fed. R. Civ. P. 12(b)(6). A claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts accept all factual allegations as true and construe them in the light most favorable to the plaintiff. *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). That said, courts are not bound to do the same for a complaint's legal conclusions. *Twombly*, 550 U.S. at 555. And, when a complaint contains sufficient facts to satisfy the elements of an affirmative defense put forth by a defendant, courts may grant dismissal on that basis. *Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013).

In the discrimination context, a plaintiff "need not . . . allege facts establishing a prima facie case of [] discrimination to survive a motion to dismiss under Rule 12(b)(6)." *Morgan v. St. Francis Hosp.*, No. 19-5162, 2019 WL 5432041, at *1 (6th Cir. Oct. 3, 2019). But, the claim must still be "plausible on its face." *Parker v. Hankook Tire Manuf. Tennessee, LP*, No. 23-5208, 2023 WL 10404971, at *3 (6th Cir. Dec. 21, 2023). A complaint has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). The prima facie elements to a discrimination claim remain factors to consider when determining whether a complaint sufficiently states a claim. *Harmon v. Honeywell Intelligrated*, No. 1:19-CV-670, 2021 WL 2373662, at *5 (S.D. Ohio June 10, 2021) (collecting cases). And, failing to sufficiently allege just one element of a discrimination

4

claim can warrant dismissal if that failure renders the claim inactionable. *Towns v. Memphis/Shelby Cnty. Health Dept.*, 2019 WL 639050, at *5 (W.D. Tenn. Jan. 25, 2019) (dismissing discrimination claim for failure to state a claim where plaintiff failed to allege an adverse employment action, making the claim inactionable).

Defendant moves to dismiss Plaintiff's claims based on several theories. (Defendant's Motion, Doc. 19.) Specifically, Defendant seeks dismissal of: (1) Plaintiff's racial discrimination claim for failure to exhaust administrative remedies; (2) Plaintiff's age discrimination claim for failure to state a claim for relief; (3) Plaintiff's disability discrimination claim for lack of subject matter jurisdiction and failure to state a claim for relief; and (4) Plaintiff's retaliation claims for failure to state a claim for relief. (*Id.*) The Court will address each of Plaintiff's claims in turn.

a. **Plaintiff's Race Discrimination Claim under Title VII**

In Count One of the Complaint, Plaintiff alleges that Defendant discriminated against him because of his race, in violation of Title VII of the Civil Rights Act of 1965. (Compl., Doc. 1, ¶ 19.) Defendant argues that Plaintiff failed to exhaust administrative remedies prior to filing this race discrimination claim. (Defendant's Motion, Doc. 19, Pg. ID 57-59.) And, "exhaustion of administrative requirements is a precondition to filing a Title VII suit." (*Id.* at Pg. ID 57 (quoting *Lockett v. Potter,* 259 F. App'x 784, 786 (6th Cir. 2008)).) Plaintiff, in his Response, does not dispute that he failed to exhaust administrative remedies prior to filing his Title VII race discrimination claim; he therefore agrees that Count One of the Complaint should be dismissed. (Response, Doc. 20, Pg. ID 79.) As such, the Court dismisses Count One of Plaintiff's Complaint. Since this dismissal

is for failure to exhaust administrative remedies, it will be without prejudice. *Henry v. Little*, No. 5:21-CV-12171, 2022 WL 4372965, at *5 (E.D. Mich. Mar. 29, 2022), *report and recommendation adopted*, No. 21-CV-12171, 2022 WL 4369953 (E.D. Mich. Sept. 21, 2022)

**b. Plaintiff's Age Discrimination Claim under 29 U.S.C. § 623(a)**

The Court continues with analysis of Count Two, Plaintiff's age discrimination claim, under Section 3(a) of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a). Defendant asserts that Plaintiff merely states a conclusory allegation in his Complaint that the Postal Service "has discriminated against him on the basis of his age." (Defendant's Motion, Doc. 19, Pg. ID 59 (quoting Compl., Doc. 1, ¶ 22 (cleaned up)).) Beyond that, only one other sentence mentions his age, where Plaintiff claims that he is "the only African American or employee over 40 years of age required to provide" documentation for taking leave. (*Id.* (quoting Compl., Doc. 1, ¶ 13).)

The elements of an ADEA claim are: (1) the plaintiff's membership in a protected class; (2) whether plaintiff suffered an adverse employment action; (3) whether the plaintiff was qualified for the position in question; and (4) whether he was treated differently than similarly situated individuals. *House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 462 (6th Cir. 2015). Defendant contends that Plaintiff's Complaint contains no allegations that he suffered an adverse employment action and was treated differently than similarly situated individuals, and therefore has failed to properly allege an actionable ADEA claim. (Defendant's Motion, Doc. 19, Pg. ID 60-61.)

6

i.    Adverse Employment Action

The Sixth Circuit defines an adverse employment action as any action that causes a "materially adverse change in the terms or conditions of employment." *Shivers v. Charter Commc'ns, Inc.*, No. 22-3574, 2023 WL 3244781, at *5 (6th Cir. May 4, 2023) (quoting *Koscis v. Multi-Care Mgmt. Inc.,* 97 F.3d 876, 885 (6th Cir. 1996) (cleaned up)). Some examples include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* "By contrast, de minimis employment actions, which could be described as mere inconveniences or an alteration of job responsibilities, are not actionable." *Id.* (quoting *Koscis,* 97 F.3d at 886) (cleaned up).

Defendant states that Plaintiff has failed to point to an adverse employment action related to his age. To summarize, Plaintiff states that (1) he was required to provide documentation prior to taking medical leave; (2) his supervisors denied him a temporary change of schedule; and (3) his supervisors monitored his work and work station closely. (Compl., Doc. 1, ¶¶ 12-17.) Defendant argues that none of these are adverse employment actions. (Defendant's Motion, Doc. 19, Pg. ID 61-62.) According to Defendant, "it is well established that an employer's request of documentation . . . does not establish an adverse employment action." (*Id.* (collecting cases).) Further, Defendant states that the denial of a request for a temporary schedule change did not result "in a materially adverse change in the terms or conditions of his employment." (*Id.* at Pg. ID 62 (collecting cases).) Finally, increased monitoring, or even intense supervision, is not an adverse employment action in Defendant's estimation. (*Id.* at Pg. ID 62-63 (collecting cases).)

7

In response, Plaintiff does not address how his supervisors' actions were materially adverse to his employment, instead focusing on a singular example of similarly-situated individuals treated differently. (Response, Doc. 20, Pg. ID 80.) Defendant also points out this insufficiency in Plaintiff's Response. (Reply, Doc. 27, Pg. ID 180-81.) The Court agrees that Plaintiff's age discrimination claim under the ADEA fails to show an adverse employment action. While the extra documentation, denial of a schedule change request, and increased supervision may be inconvenient, none of these rises above a de minimis employment action. *See, e.g., Kendall v. Dep't of Veterans Affs.*, No. 3:16-CV-434, 2018 WL 6605420, at *8 (S.D. Ohio Dec. 17, 2018) (finding requirement for plaintiff to submit documentation or doctor's note prior to taking sick leave not adverse); *Baker v. City of Toledo, Ohio*, No. 3:05-CV-7315, 2007 WL 1101254, at *4-5 (N.D. Ohio Apr. 11, 2007) (finding denial of a schedule change request not adverse); *Erwin v. Honda N. Am., Inc.*, No. 22-3823, 2023 WL 3035355, at *3 (6th Cir. Apr. 21, 2023) (finding increased supervision, or even "intense supervision" not adverse). Therefore, Plaintiff has failed to allege an adverse employment action. Without alleging an adverse employment action, Plaintiff's ADEA claim is indeed lacking and warrants dismissal. *See Towns*, 2019 WL 639050, at *6. Nevertheless, Court will continue its analysis of the ADEA elements.

### ii. Similarly Situated Individuals

Defendant also asserts that Plaintiff failed to allege how he was treated differently than similarly situated individuals. (Defendant's Motion, Doc. 19, Pg. ID 63.) Defendant points to three Sixth Circuit cases where the plaintiffs failed to establish an inference of

8

age discrimination. (*Id.*) In the first case, the Court affirmed dismissal because "the plaintiff failed to provide any facts regarding the names, relative ages, or qualifications of the substantially younger employees who allegedly assumed his job duties." (*Id.* (citing *House*, 630 F. App'x at 464) (cleaned up).) Instead, the plaintiff merely made "bare assertions" alleging age discrimination. (*Id.* at Pg. ID 63-64 (citing *House*, 630 F. App'x at 463) (cleaned up).) Likewise, in *Parker*, 2023 WL 10404971, at *3, and *Smith v. Wrigley Mfg. Co., LLC*, 749 F. App'x 446, 448 (6th Cir. 2018), the Sixth Circuit found that dismissal was proper because the plaintiffs made only conclusory allegations and stated no facts regarding the alleged similarly situated individuals and their different treatment. (*Id.* at Pg. ID 64.) Defendant argues that Plaintiff's ADEA claim is similarly empty. (*Id.*) Defendant states that the Complaint does not provide any allegation that Plaintiff was replaced by a younger, less qualified employee following any adverse employment action, or that younger employees were treated more favorably. (*Id.*)

In response, Plaintiff asserts that Defendant ignored his allegation "that he was treated differently than a similarly-situated, but not-protected employee." (Response, Doc. 20, Pg. ID 80.) Specifically, Plaintiff points to the allegation in the Complaint where he states that Defendant's employees denied Plaintiff's request to temporarily modify his working schedule, citing the need for central management's approval, but allowed another mail carrier who was younger to change his schedule without such approval. (*Id.*; *see also* Compl., Doc. 1, ¶ 15.) This is Plaintiff's only argument in support of his age discrimination claim. However, the argument is not persuasive. The Court first notes that Paragraph 15 of the Complaint does not mention the other employee's age, but only

9

mentions his race and disability status. (Compl., Doc. 1, ¶ 15.) Nowhere else in the Complaint does it mention this employee's age, either. Defendant noticed this discrepancy as well. (Reply, Doc. 27, Pg. ID 182.) The Court thus finds that Plaintiff has also failed to sufficiently allege how he was treated less favorably than similarly situated individuals. Without sufficient factual allegations supporting two of the four elements of an ADEA claim, Plaintiff has not alleged an ADEA claim that is plausible on its face. *See Towns,* 2019 WL 639050, at *6. His age discrimination claim must be dismissed.

### c. Plaintiff's Disability Discrimination Claim under 42 U.S.C. § 12102(2)(a)

Defendant argues under two theories that Plaintiff's disability discrimination claim must be dismissed. (Defendant's Motion, Doc. 19, Pg. ID 65, 67.) First, Defendant states that the Court lacks subject matter jurisdiction over the claim. (*Id.* at Pg. ID 65.) Alternatively, Defendant contends that Plaintiff has failed to state a claim upon which relief can be granted under Rule 12(b)(6). (*Id.* at Pg. ID 67.) The Court considers each theory below.

On Defendant's first theory for dismissal, Defendant asserts that Plaintiff has improperly brought his claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a). (*Id.* at Pg. ID 65-66.) But, Defendant states, this Court does not have subject matter jurisdiction over such a claim because the ADA does not apply to disability discrimination actions against federal employers like Defendant. (*Id.* at Pg. ID 66.) Rather, the Rehabilitation Act, 29 U.S.C. § 791, "provides the exclusive remedy for USPS employees asserting a claim of disability discrimination." (*Id.* (quoting *Verkade v. U.S. Postal Serv.,* 378 F. App'x 567, 577 (6th Cir. 2010) (cleaned up)).) Indeed, the ADA

10

"expressly defines the word 'employer' to exclude Federal employers from the Act's coverage." (*Id.* (quoting *Flowers v. Potter*, No. 3:05-CV-52, 2008 WL 697630, at *5 (S.D. Ohio Mar. 11, 2008) (cleaned up)).) As such, Defendant declares that a disability discrimination claim against the USPS "is not cognizable under the ADA," so the Court lacks subject matter jurisdiction "over any claims brought by the Plaintiff against the [USPS], pursuant to that Act." (*Id.* (quoting *Flowers*, 2008 WL 697630, at *5 (cleaned up)).)

Before addressing the substance of Defendant's argument, however, the Court must address the theory under which he brings it. Defendant claims the issue of the ADA's applicability is one of subject matter jurisdiction. (Defendant's Motion, Doc. 19, Pg. ID 66.) Yet, courts have recently analyzed the same issue under the theory of a Rule 12(b)(6) dismissal for failure to state a claim. *Hannah v. KOMAN Holdings, LLC*, No. 2:23-CV-3439, 2024 WL 4069067, at *2-3 (S.D. Ohio Sept. 5, 2024). In *Hannah*, the plaintiff sued her employer for disability discrimination under the ADA, but the defendant-employer argued that it was not a "covered employer" under that statute. *Id.* at *2. Instead, the defendant argued that the plaintiff should have brought the claim under the Rehabilitation Act; thus, the court lacked subject matter jurisdiction over the ADA claim. *Id.* The court, however, disagreed that Rule 12(b)(1) was the proper theory under which to seek dismissal. *Id.* Pointing out that some courts have approached the question of who meets a federal statute's definition of employer as "one implicating subject matter jurisdiction," the court nevertheless found that such reasoning "erroneously conflates subject-matter jurisdiction with failure to state a claim on which relief can be granted." *Id.* (quoting *Arbaugh v. Y & H Corp., dba Moonlight Café,* 546 U.S. 500, 511-14 (2006)). It thus

11

analyzed the argument under Rule 12(b)(6) and found dismissal proper where the ADA did not apply to the defendant-employer.

Indeed, in *Arbaugh,* in response to the plaintiff's Title VII claim, the defendant argued that it did not meet the Title VII definition of "employer" and sought dismissal due to lack of subject matter jurisdiction. 546 U.S. at 503. However, the Supreme Court held that the statutory definition appears in a separate provision that "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Id.* at 516. Thus, "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* Lower courts have applied this reasoning to similar statutory employee requirements, including those of the ADA and FMLA. *See, e.g., Homan*, 2024 WL 4069067, at *3; *Cobb v. Cont. Transp., Inc.*, 452 F.3d 543, 549 (6th Cir. 2006). Therefore, Defendant's assertion here that the USPS is not an employer within the ADA's definition does not implicate jurisdiction; it is a question of whether Plaintiff has brought a disability discrimination claim upon which relief can be granted. The Court will thus analyze Defendant's argument under the Rule 12(b)(6) standard.

Defendant is correct to point out that the ADA specifically excludes federal employers and "corporations wholly owned by the government of the United States." (Defendant's Motion, Doc. 19, Pg. ID 66; *see also* 42 U.S.C. § 12111(5)(B).) And, the USPS is "an independent establishment . . . of the United States." 42 U.S.C. § 12111(5)(B); *see also* 39 U.S.C. § 201.) Accordingly, the Rehabilitation Act is the proper statute under which USPS employees may bring disability discrimination claims against their employer.

*Verkade*, 378 F. App'x at 577. In fact, Plaintiff does not dispute that he should have brought his claim under the Rehabilitation Act and not the ADA. (Response, Doc. 20, Pg. ID 80.) Rather, Plaintiff points out that he requested leave to file an amended complaint to properly assert his claims under the Rehabilitation Act. (*Id.*) However, this argument fails. The Court notes that Plaintiff, in his Proposed Amended Complaint, once again brings his disability discrimination claims under the ADA, not the Rehabilitation Act. (*See* Proposed Amended Complaint, Doc. 26-1, Pg. ID 177-78.) Essentially, Plaintiff has conceded in his Response that his disability discrimination claim, as alleged in both the Complaint and Proposed Amended Complaint, is improper under the ADA. On these grounds alone, the Court finds it appropriate to dismiss the disability discrimination claim.

Nevertheless, the Court will still consider the merits of the disability discrimination claim. Just as with the age discrimination claim, Plaintiff need not prove every element of a disability discrimination claim to survive a motion to dismiss; but, the allegations still must plausibly state an actionable claim and the elements are factors to consider when analyzing plausibility. *See Harmon,* 2021 WL 2373662, at *5; *Towns,* 2019 WL 639050, at *4. Defendant states that even under the Rehabilitation Act, Plaintiff's disability discrimination claim would not survive a motion to dismiss. (Defendant's Motion, Doc. 19, Pg. ID 67.) Defendant points to the two theories of disability discrimination: intentional discrimination and failure to reasonably accommodate. (*Id.* (quoting *Knox Cnty., Tennessee v. M.Q.,* 62 F.4th 978, 1000 (6th Cir. 2023)).) Under failure to reasonably accommodate, a plaintiff must allege that: "(1) [he] has a disability; (2) [he]

13

is qualified for the position; (3) the agency was aware of [his] disability; (4) [he] needed

an accommodation; and (5) the agency failed to provide the necessary accommodation."

(*Id.* (quoting *Johnson v. DeJoy*, No. 23-1813, 2024 WL 2874573, at *4 (6th Cir. June 7, 2024)

(cleaned up)).) Defendant argues that Plaintiff did not allege that he needed an

accommodation, or that USPS failed to provide it. (*Id.*) In fact, Plaintiff alleges that he

"can, with or without reasonable accommodation, perform essential functions" of his job.

(*Id.*; *see also* Compl., Doc. 1, ¶ 26.) Thus, without any allegations of a necessary

accommodation or the USPS's failure to provide it, Plaintiff has not stated a claim upon

which relief can be granted for failure to reasonably accommodate. (*Id.* at Pg. ID 68.)

Furthermore, Defendant argues that Plaintiff has failed to allege intentional

discrimination. Under this framework, Plaintiff must allege: "(1) he is disabled; (2) he is

otherwise qualified for the job, with or without reasonable accommodation; (3) he

suffered an adverse employment action; (4) his employer knew or had reason to know of

his disability; and (5) following the adverse employment action, either he was replaced

by a nondisabled person or his position remained open." (Defendant's Motion, Doc. 19,

Pg. ID 68 (quoting *Griffin v. Austin*, No. 2:21-CV-3922, 2023 WL 2431718, at *4 (S.D. Ohio

Mar. 9, 2023), *aff'd sub nom. Griffin v. Sec'y of Def.*, No. 23-3220, 2023 WL 8437145 (6th Cir.

Dec. 5, 2023) (cleaned up)).) Plaintiff can also satisfy the last element by showing that

similarly situated, nondisabled employees were treated more favorably. *Griffin*, 2023 WL

2431718, at *4. According to Defendant, Plaintiff "offers only conclusory allegations," and

"fails to allege any form of discrimination" on the basis of his stated disability. (*Id.*) This,

Defendant argues, is insufficient to state a plausible claim of relief for disability

14

discrimination. (*Id.* at Pg. ID 68-69.) Moreover, if Plaintiff could prove the first two elements, he still fails to allege any adverse employment action. (*Id.* at Pg. ID 69.) And, he did not allege that he was replaced by a non-protected, less qualified employee, or that similarly-situated, nondisabled individuals were treated more favorably. (*Id.*) Thus, Defendant contends that Plaintiff has failed to state a claim for relief on his disability discrimination claim under either theory.

Plaintiff, in his Response, does not address either theory explicitly. (*See generally* Response, Doc. 20, Pg. ID 80-82.) But he does list the required elements for a prima facie case of the intentional discrimination framework from *Griffin*. (*Id.* at Pg. ID 80-81.) Thus, as Defendant notes, seemingly Plaintiff seeks to support his claim under the intentional discrimination framework. (Reply, Doc. 27, Pg. ID 184.) To this point, Plaintiff alleges that the additional documentation for taking time off work, along with the increased monitoring of his work, show how his supervisors discriminated against him. (Response, Doc. 20, Pg. ID 81.) He claims that no nondisabled employees were treated similarly. (*Id.*) And, although Plaintiff does not mention the incident with his request for a temporary schedule change in his Response, he does allege in his Complaint that another disabled employee was allowed to make a similar schedule change. (Compl., Doc. 1, ¶ 15.)

Examining his Complaint under this theory, the Court still finds Plaintiff's allegations insufficient for an intentional disability claim. As explained above, none of the actions Plaintiff's supervisors took against him qualify as materially adverse. *See, e.g., Kendall*, 2018 WL 6605420, at *8 (finding no adverse employment action where employer requested documentation prior to employee taking leave); *Erwin*, 2023 WL 3035355, at *3

15

(finding the same regarding increased workplace supervision); *Blake v. Potter*, No. 1:04-CV-2112, 2006 WL 355321, at *10 (N.D. Ohio Feb. 15, 2006) (collecting cases) (finding the same regarding denial of schedule change request). And, Plaintiff does not point to any similarly situated, nondisabled employees who were treated more favorably; the only other individuals mentioned were also disabled. (Compl., Doc. 1, ¶¶ 13, 15.) These other disabled employees are, by law, not similarly situated for purposes of a disability discrimination claim. Thus, without allegations of a materially adverse change in employment status or similarly situated individuals, Plaintiff's disability discrimination claim must be dismissed.

### d. Plaintiff's Retaliation Claims

At the conclusion of each count in his Complaint, Plaintiff alleges: "As a direct and proximate result of said discrimination and retaliation, [Plaintiff] has suffered and continues to suffer damages." (Compl., Doc. 1, ¶¶ 20, 23, 27.) Plaintiff admits that he has not separately alleged a retaliation claim, but nevertheless contends that he has alleged the elements of a retaliation claim: (1) the plaintiff engaged in a protected activity; (2) the defendant had knowledge of the plaintiff's protected conduct; (3) the defendant took an adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. (Response, Doc. 20, Pg. ID 81 (citing *Christopher v. Stouder Mem. Hosp.*, 936 F.2d 870, 877 (6th Cir. 1991), *cert. denied,* 502 U.S. 1013 (1991)).) To properly allege a retaliation claim, Plaintiff is "required to plead sufficient facts from which [the Court] can plausibly conclude that the USPS retaliated against him because he engaged in a protected activity." *Donaldson v. DeJoy,*

16

No. 22-1651, 2024 WL 3493870, at *4 (6th Cir. May 1, 2024). Here, Defendant points out that Plaintiff "simply recites the word 'retaliation' multiple times, without giving any timeframe or circumstances indicating retaliation." (Defendant's Motion, Doc. 19, Pg. ID 71.)

In response, Plaintiff cites again to the alleged actions his supervisors took against him, like requiring documentation for taking medical leave and intensely monitoring his work. (Response, Doc. 20, Pg. ID 82.) Plaintiff states that this conduct stems from Plaintiff missing work due to his disability and constitutes retaliation. (*Id.*) But, as Defendant points out in his Reply, Plaintiff has failed to sufficiently plead facts in the Complaint as to the specific retaliatory actions. (Reply, Doc. 27, Pg. ID 186.) Not only are there no adverse employment actions in his Complaint, as this Court has thoroughly explained, but Plaintiff did not allege the specific protected activity he engaged in and the causally connected retaliatory action he faced. He merely states that he faced retaliation. Such bare allegations which do not "set forth minimal facts plausibly alleging" retaliation, cannot withstand a motion to dismiss. *Finley v. Miami Univ.*, 504 F. Supp. 3d 838, 849 (S.D. Ohio 2020). Any claims Plaintiff has for retaliation must be dismissed.

## II.    Plaintiff's Motion for Leave to File Amended Complaint

Federal Rule of Civil Procedure 15 governs amendments to the pleadings. Rule 15(a)(2) applies where a party cannot amend its pleading as a matter of course pursuant to subsection (1). Under Rule 15(a)(2), "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Courts are authorized to "freely give leave when justice so requires." *Id*. Rule 15 is interpreted liberally and in favor of

17

allowing parties to amend their pleadings. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Courts consider several factors in determining whether to grant a motion to amend a pleading, such as "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458 (6th Cir. 2001) (quotation omitted).

Plaintiff seeks leave to file an Amended Complaint, which he attached to his Motion. (*See* Proposed Amended Complaint, Doc. 26-1.) Plaintiff states in his Motion that the Amended Complaint does not allege any new facts or claims that were "not considered and reviewed in the Postal Service, EEO Office or its Final Agency Decisions." (Plaintiff's Motion, Doc. 26, Pg. ID 171.) The main difference in the Amended Complaint is that Plaintiff dismisses his race discrimination claim. (*Id.*) The Court also notes that the Amended Complaint includes the name of the worker from another post office who is disabled and was not required to provide documentation prior to taking leave. (Proposed Amended Complaint, Doc. 26-1, ¶ 13.) And, the Amended Complaint contains an additional paragraph describing how some supervisors have removed wing cases (cases into which postal workers sort mail) from Plaintiff's work station, making mail sorting more difficult for him. (*Id.* at ¶ 14.) Otherwise, the Complaint and Amended Complaint are virtually identical.

Defendant contends that the Court should deny Plaintiff's Motion. (Response, Doc. 28, Pg. ID 190.) Futility is one of the factors this Court must examine when analyzing a request to amend a complaint. *Wade*, 259 F.3d at 458. Defendant first states that

18

Plaintiff's counsel failed to provide Defendant's counsel with notice of its intent to file the Motion, as required by S.D. Ohio Civil Rule 7.3. (Response, Doc. 28, Pg. ID 190-91.) And, the Motion "fails to 'affirmatively state that such consultation has occurred or was attempted in good faith and shall state whether the motion is unopposed.'" (*Id.*, quoting S.D. Ohio Civ. R. 7.3). More importantly, though, Defendant states that the Amended Complaint "would be futile." (*Id.* at Pg. ID 190.)

"A proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000). As Plaintiff admits, the Complaint and Amended Complaint are substantially similar. (Plaintiff's Motion, Doc. 26, Pg. ID 171.) The Court has conducted a thorough review, therefore, of whether the claims made in both complaints survive a Rule 12(b)(6) motion to dismiss. To reiterate, as pled in the original Complaint, the claims do not survive. Thus, in the interests of judicial efficiency, the Court will narrow its analysis to only consider whether the few additions Plaintiff made in the Amended Complaint provide sufficient factual pleadings to allow his age and disability claims to survive a motion to dismiss.

In the Amended Complaint, Plaintiff includes the name of the other disabled postal worker, Bradley Kidwell, who is not required to provide documentation prior to taking leave. (Proposed Amended Complaint, Doc. 26-1, ¶ 13.) While Plaintiff perhaps includes the other worker's name in an effort to plead more specific allegations as to similarly situated individuals treated more favorably, Defendant points out that the added details do not bolster his claim. As it relates to Plaintiff's disability discrimination claim, Mr. Kidwell "is not a similarly situated individual as a matter of law." (Response,

Doc. 28, Pg. ID 198.) Indeed, Plaintiff alleges only that Mr. Kidwell is also disabled, making him within, not outside of, Plaintiff's protected class. (*Id.* at Pg. ID 199.) Thus, the detail does not support Plaintiff's contention that he, as a disabled person, is treated less favorably than a nondisabled person. (*Id.*) His disability discrimination claim would not survive a Rule 12(b)(6) dismissal. The Amended Complaint also mentions nothing about Mr. Kidwell's age, nor does it mention any alleged individual's age, name, or qualifications to suggest that similarly situated individuals were treated more favorably than Plaintiff because of their age. So, the age discrimination claim still fails a Rule 12(b)(6) motion to dismiss. (*Id.* (collecting cases).)

Plaintiff also includes an additional detail about alleged actions his supervisors took against him. (Proposed Amended Complaint, Doc. 26-1, ¶ 14.) Specifically, Plaintiff alleges that postal managers removed wing cases from his work station "making it harder for him to sort mail packages." (*Id.*) The postal managers could provide no rational explanation for their actions when Plaintiff filed these grievances. (*Id.*) But, Defendant states that, although this action may make it harder for Plaintiff to do his job, this conduct is not an adverse employment action. (Response, Doc. 28, Pg. ID 194.) Removing the wing cases does not significantly change Plaintiff's employment status or conditions. (*Id.*) Put differently, "there are no allegations that, as a result of temporarily removing wing cases, [Plaintiff] was terminated, not promoted, reassigned with significantly different responsibilities, or caused a significant change in benefits." (*Id.*) And, as Defendant points out, the wing cases were brought back, and the temporary nature of the action "makes it a non-materially adverse employment action." (*Id.* (quoting *Bowman v. Shawnee State*

*Univ.*, 220 F.3d 456, 462 (6th Cir. 2000)).) Without any other allegations of adverse employment actions, both Plaintiff's age and disability discrimination claims would not survive a motion to dismiss; thus, Defendant argues that Plaintiff's Amended Complaint would be futile.

The Court agrees. To start, Plaintiff failed to correct his disability discrimination claim, bringing it under the inapplicable ADA, instead of the Rehabilitation Act. (*See* Proposed Amended Complaint, Doc. 26-1, ¶¶ 23-27.) This alone makes the Amended Complaint futile as to the disability discrimination claim. But, the remainder of the Amended Complaint is similarly futile. The Court has already found that Plaintiff's Complaint failed to allege age and disability discrimination claims because Plaintiff did not sufficiently plead facts to show adverse employment actions against him, nor similarly situated, non-protected employees who were treated more favorably. These are required elements for both discrimination claims. Plaintiff's Amended Complaint, while including additional details, does nothing to cure these fatal defects to his allegations. Defendant's Motion to Dismiss the original Complaint, along with the insufficient changes to the Amended Complaint, make it clear that granting Plaintiff leave to file his Amended Complaint would be futile. It, too, would not survive a Rule 12(b)(6) motion to dismiss.

\*     \*     \*

Therefore, with futile amendments, the Court finds that justice does not require Plaintiff be given opportunity to amend his Complaint. Plaintiff's Motion for Leave to File Amended Complaint is therefore denied.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Leave to File Amended Complaint (Doc. 26) and **GRANTS** Defendant's Motion to Dismiss (Doc. 19). Plaintiff's race discrimination claim is **DISMISSED WITHOUT PREJUDICE**. Plaintiff's remaining claims are **DISMISSED WITH PREJUDICE**. This case is **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND